COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | No. 08-22-00055-CV |
|---|---|---|
| IN THE INTEREST OF: | § | Appeal from the |
| I.J.K. and E.A.K., | § | 383rd Judicial District Court |
| Children. | § | of El Paso County, Texas |
| | § | (TC# 2019DCM7783) |

## MEMORANDUM OPINION

J-P.K. (Father) and S.K.K. (Mother) are the parents of three children born during their marriage. Father appeals from the trial court's order naming the parents joint managing conservators and setting Father's child support obligations at 30% of his monthly net resources. On appeal, Father contends that the trial court lacked subject-matter jurisdiction to enter the order because the parties were not separated when the Office of the Attorney General (OAG) filed its initial petition seeking a conservatorship and support order. Father further contends that the trial court erred by (1) naming the parties joint managing conservators, rather than naming him the sole managing conservator; (2) failing to give him a child support credit for a fourth child living in another household; (3) failing to give him a travel credit to reduce his monthly child support obligations; and (4) awarding attorney's fees to Mother. He further contends that the OAG used an incorrect method in determining he was delinquent in his child support payments. For the

1

reasons set forth below, we reverse and remand the trial court's determination that Father was not entitled to a child support credit with respect to his fourth child but affirm the trial court's judgment in all other respects.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Father and Mother were married in April 2014. Father was living in Canada at the time of their marriage then moved to Pennsylvania in September 2015, where Mother and their first child, I.J.K., (born January 2015) were living at the time while Mother finished pharmacy school. While living together in Pennsylvania, they had their second child, E.A.K. (born August 2017). Mother received a job offer in January 2018 in El Paso, Texas, and she moved there with the children. Although the parties disagree somewhat on the details of their relationship after that time, according to Father, he joined Mother in El Paso approximately six months later and lived with her and the children there until Mother "kicked [him] out." He then moved to Dallas where his job was located.[1]

### A. The OAG's petition

On December 9, 2019, the OAG filed a petition in the trial court alleging the parties were separated and asking the court to enter a conservatorship and child support order for current and retroactive support for the parties' two children. Father and Mother both retained attorneys who filed answers to the petition and both requested an award of attorney's fees. In February 2020, an associate judge entered a temporary order stating that Father had agreed to pay child support while the matter was pending based on a finding that they had two children at the time. In May 2020, Mother had a third child, D.M.K.[2] Following a hearing at which Father and Mother both appeared

---

[1] In her testimony, Mother denies that she "kicked [him] out," but appears to agree that he no longer lived in her home in El Paso.

[2] The record does not reflect that Father contested the paternity of the third child.

with counsel, the associate judge entered an Order in Suit Affecting the Parent Child Relationship (SAPCR) on October 2, 2020, naming the parents joint managing conservators of the three children, naming Mother the primary managing conservator with the right to designate the children's residence, and giving Father standard visitation rights. The associate judge found that Father's monthly net resources were $7,904.37 and set Father's child support obligations at 30% of the same in accordance with the Texas Family Code statutory guidelines for the three children living with Mother.

### B. The de novo hearing

Thereafter, Father requested a de novo hearing solely on the issue of his child support obligations. Significant to this appeal, Father raised two challenges to the associate judge's order: (1) whether he was entitled to a child support credit for a fourth child in another household he claimed he had fathered with another woman prior to the parties' marriage; and (2) whether he was entitled to a travel credit to lower his monthly child support obligations to account for his travel expenses to visit his three children in El Paso. Mother also requested a de novo hearing on the issue of Father's net resources, contending that the associate judge should have used Father's 2020 year-to-date income rather than his 2019 income to determine his child support obligations. And again, Mother requested an award of attorney's fees.

### 1. Evidence regarding Father's request for a support credit for his other child

At the de novo hearing, Father testified he had a 14-year-old daughter living in Cameroon, Africa, who was born to a woman with whom he had been in a relationship prior to his marriage to Mother. Father acknowledged that there was no court order in place requiring him to provide his daughter with support; however, he testified that he was obligated by Cameroon law to support his daughter, as his name was on her birth certificate. According to Father, he had been sending

approximately $300 to $500 each month to his sister and a minister, both of whom lived in Cameroon, as support for the child; he provided three years of receipts for the payments to the minister.[3]

Mother did not dispute that Father had a child living in Cameroon, acknowledging that on the eve of their wedding, Father had informed her of the child. According to Mother, she even filed for a "green card" for the child to come to the United States at the same time that she filed for Father's green card. Mother testified that although she wanted Father to support the child in Cameroon, she did not want Father to have contact with the child's mother, and the parties agreed that support payments for the child would "go through [her]." Mother further testified that because Father was unemployed for the first two years of their marriage, she sent $300 to $400 monthly payments to the minister in Cameroon, presumably for child support.[4] Mother nevertheless posited that any money Father later sent to the minister in Cameroon was intended for ministry support rather than child support. And because she believed Father never supported the child in the past and did not intend to do so in the future, she argued he was not entitled to a support credit for the child.

### 2. Evidence regarding Father's request for a travel credit

At the hearing, Father testified that he had been spending approximately $1,100 a month when he traveled from Dallas to El Paso to visit the children, which included both his airfare and lodging. And he asked the trial court to provide him a travel credit in that amount to reduce his monthly child support obligations. Mother objected to the travel credit, expressing her opinion that

---

[3] Father acknowledged that at least some of the money that he had sent to the minister was for the general purpose of supporting the ministry itself, rather than just for his child's support. Father's sister also testified she had periodically received payments from Father to be used for his child's support, but a portion of the payments he sent were used to support their parents when they were both alive.

[4] Mother's testimony was somewhat conflicting on this point, as she initially indicated that the payments were for the child's support but later asserted the payments were for ministry support.

Father's expense estimate was excessive. Instead, she offered to pay half of Father's airfare to travel to El Paso if he booked it in advance for a reasonable rate, and she further offered her home for Father to stay and one of her vehicles for him to use when he was visiting the children.

### 3. Evidence regarding Mother's request for attorney's fees

Mother's attorney testified Mother had incurred $7,115 in attorney's fees to date and provided his billing records in support thereof.

### C. The court's ruling

At the conclusion of the de novo hearing, the trial court expressly stated it would not give Father a child support credit for his "child born out of the marriage," and it would only consider his obligation to pay child support for the three children who were before the court, despite stating that Father "needs to continue" to support his fourth child.

The trial court entered its final SAPCR order confirming the associate judge's ruling designating the parents joint managing conservators of the children, with Mother serving as the primary conservator and Father having standard visitation rights. The court calculated Father's monthly support obligations based on the standard statutory guidelines for three children, finding that Father's monthly net resources were $8,323 based on his 2020 income and ordering him to pay 30% of the same to Mother. The court also determined that Father's child support payments were delinquent in the amount of $757.08 as of March 21, 2021, and ordered Father to pay an additional $100 each month in child support until the arrearage was paid in full.

The court impliedly denied Father's request for a travel credit and instead ordered Mother and Father to each pay 50% of any airfare for the transportation of either the children or the Father as necessary for Father to exercise his visitation rights.[5] In addition, the court ordered Mother to

---

[5] The order further contained a stipulation that Father was to select the lowest cost for any tickets purchased for the

"provide a bedroom for [Father] to stay in during his period of possession" and to "provide a vehicle to [Father] to use while he is in El Paso, Texas during his periods of possession . . . so long as that vehicle is operational."

And finally, the trial court entered a judgment for $3,557.50 in attorney's fees against Father to be paid as additional child support, ordering Father to pay an additional $100 per month until the judgment was paid in full. This appeal followed.

## II. Issues on Appeal

Father raises six issues on appeal. In Issue One, Father contends the trial court lacked jurisdiction to hear the OAG's SAPCR petition because the OAG falsely stated that the parties were separated at the time it filed suit. In Issue Two, he contends the trial court erred by naming the parties joint managing conservators rather than naming him sole managing conservator. In Issue Three, he contends the trial court erred by failing to give him a child support credit for the child he had outside the marriage. In Issue Four, he contends the trial court erred by failing to reduce the amount of his monthly child support obligations with a travel credit. In Issue Five, he contends the OAG incorrectly calculated his child support arrearages. And in Issue Six, he contends the trial court erred in awarding attorney's fees to the Mother.

## III. Pro Se Briefing Standards

As a preliminary matter, we note that while Father briefed his appeal arguments pro se, he is held to the same standard as a licensed attorney and required to comply with all applicable laws and rules of procedure. *In Interest of M.D.G.*, 527 S.W.3d 299, 303 (Tex. App.—El Paso 2017, no pet.); *see also Zavala v. Franco*, 622 S.W.3d 612, 617-18 (Tex. App.—El Paso 2021, pet.

---

children and that he was to book the "cheapest fair" for plane tickets "at least 30 days in advance of the travel date" when purchasing tickets for himself.

denied) (citing *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184 (Tex. 1978) (stating "[l]itigants who represent themselves must comply with the applicable procedural rules, or else they would be given an unfair advantage over litigants represented by counsel")). The Texas Rules of Appellate Procedure require adequate briefing, which includes making a clear and concise argument for the contentions made using appropriate citations to authorities and the record. *See ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 880–81 (Tex. 2010) (citing TEX. R. APP. P. 38.1(i)). In reviewing for briefing waiver, we are required to construe briefs liberally—whether filed by pro se litigants or licensed attorneys—so as not to waive the right to appellate review. *See Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732 (Tex. 2020) (briefs must "be liberally, but reasonably, construed so that the right to appeal is not lost by waiver"). Similarly, we are instructed that courts should hesitate to resolve cases on procedural defects and instead work to resolve cases on their merits. *See St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 213-14 (Tex. 2020) (per curiam). And we recognize that in general, substantial compliance with appellate briefing requirements is considered sufficient to preserve error on appeal. *See* TEX. R. APP. P. 38.9. However, the briefing requirements are not satisfied by merely uttering brief, conclusory statements unsupported by citations to legal authority. *Jonson v. Duong*, 642 S.W.3d 189, 194 (Tex. App.—El Paso 2021, no pet.). And failing to cite legal authority or provide substantive analysis results in waiver. *Id.*

We analyze the issues set forth in Father's brief with these principles in mind.

## IV. TRIAL COURT'S JURISDICTION

In Issue One, Father contends that the trial court lacked jurisdiction to hear the OAG's petition because the OAG's statement that the parties were separated and therefore in need of a conservatorship and support order was the "basis for [the court's] jurisdiction," and that statement

7

was false. He maintains the parties still shared a residence when the petition was filed.

As a preliminary matter, in his brief, Father appears to concede that the trial court had personal jurisdiction over him, and as the OAG points out, Father waived any allegation that the trial court lacked personal jurisdiction over him when he made a general appearance in the case without challenging the trial court's authority over him.[6] *See generally Guardianship of Fairley*, 650 S.W.3d 372, 380, 386 (Tex. 2022) (recognizing that a party may waive his right to challenge personal jurisdiction by entering a general appearance in the case and consenting to the court's authority over him). Instead, Father appears to argue that the trial court lacked subject-matter jurisdiction to hear the OAG's petition based on the allegedly false statement in its petition that the parties were separated at the time of filing. And although Father concedes that he did not challenge subject-matter jurisdiction in the trial court, he argues subject-matter jurisdiction is required for a court to hear a case and cannot be waived. *See generally Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993) (recognizing that "[s]ubject matter jurisdiction is essential to the authority of a court to decide a case . . . and cannot be waived"). However, as Mother points out, Father has not cited any authority for the proposition that the OAG's allegedly false statement in its petition regarding the parties' separation deprived the trial court of subject-matter jurisdiction.

Moreover, Father has not referred us to any facts in the record to support his claim that the OAG's statement regarding their separation was false.[7] To the contrary, both the record and

---

[6] In its brief, the OAG mistakenly believes that Father is contesting personal jurisdiction based on the fact that he was never served with a copy of its petition. Father's assertion that he was not served with citation, however, appears to relate to his claim that he was not served with a copy of a second petition that he contends was filed against Mother in the same cause number (alleging that she had committed family violence). And he contends that because he was unaware of the second petition, he was deprived of the ability to advocate that he should be named sole managing conservator—a claim that we address when analyzing Father's Issue Two.

[7] In his brief, Father points out that the deputy who served the citation on Mother and attempted to serve the citation

Father's own statements in his brief refute his claim that they were not separated when the OAG filed its petition. Although Father's first attorney initially stated in his response to the OAG's petition that the parties "might" have still been living together at the time the OAG petition was filed, only two months later, in February of 2020, Father reported to the El Paso County Domestic Relations Office that he had been living in Dallas where his job was located and had been visiting his children every other weekend in El Paso. And in his briefing, Father similarly acknowledges that he had been living in Dallas since the summer of 2019, and only returned to El Paso every other weekend to visit his children. Finally, at the de novo hearing, Father repeatedly testified Mother had "kicked [him] out" of the house in El Paso, and that he had no choice but to move to Dallas where his job was located.

Accordingly, we find no merit to Father's contention that the trial court lacked subject-matter jurisdiction to hear the OAG's petition.

We overrule Father's Issue One.

## V. ORDER NAMING THE PARTIES JOINT MANAGING CONSERVATORS

In Issue Two, Father contends that the trial court abused its discretion by naming the parties joint managing conservators rather than naming him sole managing conservator of their three children. We conclude that Father waived his right to raise this issue on appeal, as he failed to contest the associate judge's conservatorship order in his request for a de novo hearing.

Under § 201.015, a party requesting a de novo hearing challenging an associate judge's ruling is required to "specify the issues that will be presented to the referring court." TEX. FAM. CODE ANN. § 201.015(a), (b). And in turn, the de novo review in the referring court is

---

on him indicated on the "diligence" sheet that Mother provided the deputy the address where Father worked in Dallas. Mother's knowledge of where Father worked, however, does nothing to establish that the parties were not separated at the time.

"limited to those issues which were specified in the request." *Legarreta v. Alvidrez*, 631 S.W.3d 546, 549 (Tex. App.—El Paso 2021, no pet.) (citing *Interest of A.L.M.-F.*, 593 S.W.3d 271, 276 (Tex. 2019); *In re Sakyi*, No. 05-20-00574-CV, 2020 WL 4879902, at \*5 (Tex. App.—Dallas Aug. 20, 2020, no pet.) (mem. op.)). Accordingly, any issues not specified in the request upon which the associate judge ruled remain in "full force and effect." *Legarreta*, 631 S.W.3d at 550 (citing TEX. FAM. CODE ANN. § 201.013(a); *Interest of A.L.M.-F.*, 593 S.W.3d at 276).

As set forth above, Father only specified that he was requesting a hearing on the issues relating to child support in his written request for a de novo hearing. And at the start of the de novo hearing, Father confirmed that his only objection to the associate judge's order centered on his child support obligations: his travel costs and whether he should have been given a credit for his other child living in Cameroon. Neither party raised the conservatorship issue at the de novo hearing.

Father, however, contends that when he requested the de novo hearing, he was unaware that a petition had been filed in the current cause number against Mother, one with a "Family Violence" notation on it. According to Father, he only discovered the petition after he filed his appeal to this Court. And he contends that if he had known of the petition, he would have been able to raise issues in the trial court regarding whether Mother may have committed family violence and whether there may have been prior "CPS investigations" involving the children. And Father correctly points out that evidence of family violence or child neglect has an impact on conservatorship issues and can preclude the offending parent from being named joint managing conservator.[8]

---

[8] *See* TEX. FAM. CODE ANN. § 153.004(b) ("[i]t is a rebuttable presumption that the appointment of a parent as the sole managing conservator of a child . . . is not in the best interest of the child if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by that parent directed against the other

However, Father has failed to cite any authority that would allow us to reverse the trial court's judgment on conservatorship based only on an argument that a parent *may* have committed family violence or child neglect where that issue was not presented to the trial court in the first instance. *See Schell v. Schell*, No. 03-11-00833-CV, 2014 WL 641744, at *1 (Tex. App.—Austin Feb. 14, 2014, no pet.) (mem. op) (where father's challenge to conservatorship decision was not based on sufficiency of the evidence, he could not raise the issue for the first time on appeal, and therefore the issue was waived); *see also Legarreta*, 631 S.W.3d at 549 (recognizing that a court cannot reverse a trial court judgment based on a complaint not raised in the trial court) (citing *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (per curiam)); *see generally* TEX. R. APP. P. 33.1(a), (b) (to preserve a complaint for appeal, a party must present it to the trial court by a timely request, objection, or motion that specifically states the grounds for the desired ruling and obtain a ruling on such).

Here, Father not only failed to raise an issue pertaining to family violence in the trial court, but he also expressly testified at the de novo hearing that neither he nor Mother had committed any physical violence against each other, and he failed to refer to any prior CPS investigations in his testimony. And the existence of what appears to be a family violence petition in the record, with no indication of who filed the petition or what it was based upon, does not support a conclusion that the family violence issue was properly raised in the trial court.[9]

---

parent, a spouse, or a child."); *see also Baker v. Baker*, 469 S.W.3d 269, 273 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (recognizing that although the law presumes that the appointment of both parents as joint managing conservators is in the best interest of the children, the presumption is removed if the trial court makes a finding of a history of family violence).

[9] We note that a parent may file a motion to modify a trial court's conservatorship order based on evidence that the other parent committed family violence or child neglect. *See In re L.C.L.*, 396 S.W.3d 712, 717-719 (Tex. App.—Dallas 2013, no pet.) (recognizing that a trial court has the discretion to modify conservatorship where there is evidence of family violence). Accordingly, Father is not left without a remedy if he believes any such evidence exists.

11

Accordingly, we conclude that the issue of whether the trial court abused its discretion in naming the parties joint managing conservators was not preserved for our review.

We overrule Father's Issue Two.

## VI. FAILURE TO ENTER A CREDIT FOR A CHILD IN ANOTHER HOUSEHOLD

In Issue Three, Father contends that the trial court erred in failing to provide a child support credit for his fourth child living in Cameroon. Because we agree that the trial court was required to consider the existence of Father's fourth child in making its child support determination, we remand the matter to the trial court for it to do so.

### A. Applicable law

The Texas Family Code provides a set of guidelines that are "intended to guide the court in determining an equitable amount of child support," and which are rebuttably presumed to be in the best interest of the child. TEX. FAM. CODE ANN. §§ 154.121, 154.122. When, as here, an obligor's monthly net resources are within a certain range and there are three children before the court, the guidelines provide that a court should presumptively set child support at 30% of the obligor's monthly net resources.[10] TEX. FAM. CODE ANN. § 154.125. However, the Code further provides that: "In applying the child support guidelines . . . if the obligor has the duty to support children in more than one household, the court shall apply the percentage guidelines for multiple families under Chapter 154." TEX. FAM. CODE ANN. § 156.406. And in turn, Chapter 154 provides two alternative methods for determining how to set child support in this situation. Section 154.128

---

[10] The Code provides that the statutory guidelines are "specifically designed to apply to situations in which the obligor's monthly net resources are not greater than the maximum amount of net resources to which the statutory guidelines are applicable, as most recently published by the Title IV-D agency in the Texas Register." TEX. FAM. CODE ANN. § 154.125(a). The maximum amount of net resources is currently set at $8,500. *See Matter of Marriage of Comstock*, 639 S.W.3d 118, 137 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (recognizing that effective September 1, 2013, the Texas Attorney General raised the maximum amount from $7,500 to $8,550) (citing 39 Tex. Reg. 4647, 4647 (2013) (Off. of the Att'y Gen.)). Father does not challenge the trial court's finding that his monthly net resources were $8,323 which brought him within those guidelines.

(entitled "Computing Support for Children in More Than One Household") provides a detailed computation for the trial court to use to determine the child support credit amount; it requires the court to consider both the children before the court as well as "any other children, including children residing with the obligor, whom the obligor has the legal duty of support." TEX. FAM. CODE ANN. § 154.128(a), (b). As an alternative, § 154.129 (entitled "Alternative Method of Computing Support for Children in More than One Household") provides that when a parent/obligor's net resources are within a certain range,[11] the trial court "in lieu of performing the computation under the preceding section . . . may determine the child support amount for the children before the court by applying the percentages" in the following table (which we have abbreviated for our purposes):

| | | Number of children before the court | | |
|---|---|---|---|---|
| | | 1 | 2 | 3 |
| Number of other children for whom the obligor has a duty of support | 0 | 20.00 | 25.00 | 30.00 |
| | 1 | 17.50 | 22.50 | 27.38 |
| | 2 | 16.00 | 20.63 | 25.20 |
| | 3 | 14.75 | 19.00 | 24.00 |
| | 4 | 13.60 | 18.33 | 23.14 |
| | 5 | 13.33 | 17.86 | 22.50 |
| | 6 | 13.14 | 17.50 | 22.00 |
| | 7 | 13.00 | 17.22 | 21.60 |

TEX. FAM. CODE ANN. § 154.129(a).[12]

---

[11] Section 154.129(a) provides that this table applies when a parent/obligor's net monthly resources are not greater than the maximum amount published by the Title IV-D agency in the Texas Register. TEX. FAM. CODE ANN. § 154.129(a).

[12] In its brief, the OAG contends that the Family Code "permits, but does not compel, the trial court to account for a child or children not before the court at the time the child support guidelines are to be applied to the obligor's net resources," pointing to the Code's use of the word "may" in § 154.129, which the OAG points out is a discretionary term. The Code's use of the word "may," however, is only referring to the court's discretion to choose the method of calculating a child support credit when an obligor has additional children living in another household. The Code states a court "shall" consider any such additional children in calculating a parent's child support obligations. *See Escue v. Reed*, 790 S.W.2d 717, 721 (Tex. App.—El Paso 1990, no writ) (court abused its discretion under former version of the Family Code in failing to consider father's child support obligations to a second child living in a different household in determining his child support obligations to the child before the court).

The Code creates a rebuttable presumption that these guidelines are in the best interest of the child and gives the trial court the discretion to deviate from the guidelines when it determines that applying the guidelines would be "unjust or inappropriate under the circumstances." *See* TEX. FAM. CODE ANN. § 154.122(a), (b). However, when the trial court chooses to apply the statutory guidelines, it must do so correctly and consider all relevant facts when doing so. *See Escue v. Escue,* 810 S.W.2d 845, 848 (Tex. App.—Texarkana 1991, no writ) ("When the court chooses to use the guidelines . . . it is error not to consider the facts set out therein that bear upon their application."). In particular, the trial court must, when applicable, consider a parent/obligor's duty to support another child not before the court when determining the amount of child support to be ordered; it is error not to do so. *See Escue v. Reed*, 790 S.W.2d 717, 721 (Tex. App.—El Paso 1990, no writ). Moreover, the Code provides that when a court deviates from the § 154.129 guidelines, it is required to enter written findings to support its order, including the "specific reasons that the amount of child support per month ordered by the court varies from the amount computed by applying the percentage guidelines under Section 154.125 or 154.129, as applicable." TEX. FAM. CODE ANN. § 154.130 (a-3), (b-4).

### B. Analysis

The OAG and Mother believe that the court was not required to consider Father's fourth child because Father was admittedly not under a court order to support the child and because there was a dispute regarding whether he had in fact been sending payments to Cameroon to support the child. And they contend the trial court had the discretion to disbelieve that Father was sending child support money to Cameroon and therefore the child in Cameroon should not be considered in calculating Father's child support obligations in the current case. *See Gerges v. Gerges*, 601 S.W.3d 46, 57 (Tex. App.—El Paso 2020, no pet.) (where parties presented conflicting testimony,

14

"it was within the trial court's province [to] resolve such conflicts, as the trial court was the sole judge of the credibility of the witnesses and the weight to be given their testimony").

This argument would be correct under the prior version of the Family Code, which only required a trial court to give a parent/obligor a child support credit for a child not before the court if he was under a child support payment court order and was actually making child support payments to the other child. *See* V.T.C.A., Family Code § 14.054 (requiring the court to consider the "the amount of child support actually and currently being paid or received by either party under another child support order" in determining a parent's child support obligation); *see also Salazar v. Att'y Gen. of Texas*, 827 S.W.2d 41, 42 (Tex. App.—Corpus Christi 1992, writ denied) (explaining procedure to be followed under former version of the Family Code when trial court was faced with a multi-family household). However, the current version of the Code (in effect since 1996) does not impose any requirement that a parent be under a child support court order or actually be making child support payments to receive a child support credit.[13] The trial court must consider children living in another household in setting child support for whom the parent/obligor owes a "legal duty" of support. TEX. FAM. CODE ANN. § 154.128(a)(1). And as Father points out, there are myriad cases recognizing that a parent owes his child a "legal duty" to support a child regardless of child support court orders. *See, e.g.*, *Beck v. Walker*, 154 S.W.3d 895, 907 (Tex. App.—Dallas 2005, no pet.) (parent has a duty to support his child "regardless of whether the parent is under a court order to support the child"); *see also Homfeld v. Pence*, 487 S.W.2d 224, 226 (Tex. App.—El Paso 1972, no writ) (recognizing same); *Office of Att'y Gen. of Texas v. Scholer*, 403 S.W.3d 859, 866 (Tex. 2013) (recognizing that "[t]he obligation which the law imposes . . . on parents to support their children is not considered a 'debt' . . . but a legal duty

---

[13] The former version of the Family Code found in Chapter 14 was amended in 1995 to reflect this new approach to calculating child support in multi-family households. *See* V.T.C.A., Family Code §§ 14.054, 14.055.

arising out of the status of the parties."); *see generally* TEX. FAM. CODE ANN. § 151.001(a)(3) ("A parent of a child has the . . . duty to support the child, including providing the child with clothing, food, shelter, medical and dental care, and education[.]").

To be entitled to a child support credit, the parent/obligor has the burden to prove he owes a duty of support to additional children in another household. *See Luckman v. Zamora*, No. 01-13-00001-CV, 2014 WL 554630, at *4–5 (Tex. App.—Houston [1st Dist.] Feb. 11, 2014, no pet.) (mem. op.) (finding that father failed to meet his burden of establishing a duty of support where he never adduced evidence of his sons' ages or any other evidence suggesting that he owed a duty of support and further failed to raise the issue in a timely manner). Here, Father presented undisputed testimony at the de novo hearing that he had a 14-year-old daughter living in Cameroon, Africa; that he was named as the father on the child's birth certificate; and that he was obligated under Cameroon law to support the child. And at the hearing, Mother acknowledged the child's existence and never disputed that Father had a duty to support her; instead, Mother only disputed whether Father had been sending money to support her and whether he would do so in the future. The trial court acknowledged the child, stating that she believed Father "needs to continue to send money as he has to the family members or to the church." However, the court did not explain why it declined to consider the child in calculating Father's support obligations and why it only set his obligations under the statutory guidelines for the three children before the court.

Accordingly, we reverse the trial court's judgment and remand for the court to determine whether Father owes a legal duty to his child in Cameroon. And if the court finds that he does, we direct the court to determine Father's child support obligations in light of that duty and enter any necessary factual findings in support of its determination.

We sustain Father's Issue Three.

## VII. TRAVEL ALLOCATION AND VISITATION ARRANGEMENTS

In Issue Four, Father argues that the trial court abused its discretion in denying his request to deduct a travel credit from his child support obligations and instead ordering Mother to pay half of his airfare, allow him stay in her home, and allow him to use her car during his periods of possession. For the reasons set forth below, we reject Father's argument.

### A. Trial court's allocation of Father's travel expenses

As set forth above, the Texas Family Code creates a rebuttable presumption that the statutory guidelines for setting child support are in the best interest of the child. TEX. FAM. CODE ANN. §§ 154.121, 154.122. However, the Code gives the court discretion to deviate from the statutory guidelines if it determines that there is evidence to rebut the presumption that following the statutory guidelines is in the best interest of the children. TEX. FAM. CODE ANN. § 154.123(a). And in particular, it provides that "[i]n determining whether application of the guidelines would be "unjust or inappropriate under the circumstances, the court shall consider evidence of all relevant factors, "including the cost of travel in order to exercise possession of and access to a child[.]" TEX. FAM. CODE ANN. § 154.123(b)(14).

A party claiming on appeal that the trial court erred by failing to deviate from the statutory guidelines shoulders the burden of establishing that the trial court abused its discretion in refusing to do so. *See generally Attaguile v. Attaguile*, 584 S.W.3d 163, 184 (Tex. App.—El Paso 2018, no pet.) (recognizing appellant's burden of establishing an abuse of discretion for trial court's refusal to deviate from the statutory guidelines); *see also Stallworth v. Stallworth*, 201 S.W.3d 338, 349 (Tex. App.—Dallas 2006, no pet.) (party complaining of abuse of discretion has burden to bring forth record showing such abuse). And in general, a trial court has the discretion to determine how to allocate travel expenses necessary to facilitate visitation, and in doing so, the

court "should consider the parties' financial situations to ensure that the travel expenses are not so great that they would prevent the proper support of the [child] by either party." *In Interest of L.M.*, No. 02-17-00173-CV, 2018 WL 3154187, at *4 (Tex. App.—Fort Worth June 28, 2018, no pet.) (mem. op.) (quoting *In re N.T.P.*, 402 S.W.3d 13, 22 (Tex. App.—San Antonio 2012, no pet.)). Therefore, a court may, in its discretion, decline to provide the noncustodial parent with a travel credit and may instead order the noncustodial parent to pay all or a portion of the travel expenses incurred in exercising his visitation rights. *See Interest of M.A.G.*, No. 04-18-00833-CV, 2020 WL 7633920, at *5 (Tex. App.—San Antonio Dec. 23, 2020, pet. denied) (mem. op.) (recognizing trial court has the discretion to order the noncustodial parent to pay transportation costs incurred in exercising his visitation rights); *In re D.T.M.*, No. 01-01-00241-CV, 2002 WL 31521151, at *6 (Tex. App.–Houston [1st Dist.] Nov. 14, 2002, no pet.) (holding trial court did not abuse its discretion in ordering father to pay 100% of travel expenses).

Father has presented no argument to support his claim that the trial court abused its discretion in allocating the travel expenses as it did. At most, Father makes a broad argument that he incurred significant visitation expenses, which the trial court was free to disbelieve. *See Interest of H.K.D.*, No. 05-18-00968-CV, 2020 WL 428152, at *8 (Tex. App.—Dallas Jan. 28, 2020, no pet.) (mem. op.) (trial court had the discretion to determine that "some or all" of Father's testimony regarding his travel expenses was not credible). And he fails to cite to any authority to support a finding that the trial court's ruling on child support was "unjust and inappropriate" or that the court's failure to provide a travel credit would interfere with his ability to support the children or that it was otherwise not in the children's best interest.

## B. The visitation arrangements

Father also challenges the trial court's order directing Mother to allow him to stay in her

home and use one of her vehicles during his periods of possession, contending that the order is "unenforceable" and violates his "right to privacy."[14] However, as Father himself recognizes, he did not object to the trial court's decision on either ground in the trial court. Instead, Father's attorney expressly stated that Father agreed to this arrangement at the hearing on the entry of judgment. And contrary to Father's contention, the OAG did not "object" to the ruling on either ground; instead, the OAG merely advised the trial court that it would prefer to have "child support set in a sum certain" rather than require Mother to reimburse Father for his airfare and use her home and car, as the OAG is "limited on what [it] can enter in [its] system as well as what [it] can effectively track."

Accordingly, we conclude that any objection that Father may now have to these travel arrangements was not preserved for our review. *See generally Gerges*, 601 S.W.3d at 63 (recognizing that a party must raise challenges to a trial court's conservatorship order in the first instance to preserve the issue for appellate review) (citing TEX. R. APP. P. 33.1(a)(1); *In re L.M.I.*, 119 S.W.3d 707, 710-11 (Tex. 2003) (recognizing that even constitutional claims must be preserved for appellate review)).

In addition, even if we were to overlook Father's failure to object to these visitation arrangements, we note that a trial court has "broad discretion to fashion the terms of a decree related to custody, visitation, and possession" that it finds to be in the child's best interest. *In Interest of N.P.M.*, 509 S.W.3d 560, 563-64 (Tex. App.—El Paso 2016, no pet.) (citing *In re Doe 2*, 19 S.W.3d 278, 281 (Tex. 2000); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *see also* TEX. FAM. CODE ANN. § 153.002) ("The best interest of the child shall always be the primary

---

[14] In his reply brief, Father also argues that this portion of the order "adjudicate[d] the parties' property rights" and that it had no jurisdiction to do so "in the absence of a divorce decree." This case, however, has no bearing on property rights.

consideration of the court in determining the issues of conservatorship and possession of and access to the child."). Here, Father has failed to provide any argument that the order was not in the children's best interest. And he has failed to cite to any legal authority for his contention that the order was either unenforceable or in violation of his "right to privacy." [15]

Accordingly, we conclude that this issue was not properly preserved for our review.

We overrule Father's Issue Four.

## VIII. ARREARAGES AWARD

In Issue Five, Father challenges the trial court's finding that he was in arrears on his child support payments and requests that we reverse the judgment. Father's argument appears to be based on the belief that it is improper for the OAG to calculate child support such that the due date is the first of the month. According to Father, this not only conflicts with the manner in which most employers withhold child support payments from their employees' paychecks but also conflicts with § 157.266, which provides that a "child support payment is delinquent for the purpose of accrual of interest if the payment is not received before the 31st day after the payment date stated in the order . . ." TEX. FAM. CODE ANN. § 157.266(a).

Father, however, did not preserve this issue for our review, as he admittedly failed to make this objection when the arrearages were discussed or when the trial court entered its judgment on the arrearages. As explained above, as a general rule, a party must first complain to the trial court by a timely request, objection, or motion and obtain a ruling as a prerequisite for appellate review. We recognize, however, that a party may argue for the first time on appeal that a trial court's order on arrearages was not supported by sufficient evidence. *Office of Att'y Gen. of Texas v. Burton*, 369 S.W.3d 173, 175 (Tex. 2012) (per curiam) (concluding that OAG was not required to file a

---

[15] We note that contrary to Father's implication, he is not required to stay in the family home.

post-trial motion challenging the trial court's determination that an obligor did not owe any delinquent child support to preserve a sufficiency of the evidence challenge to the court's determination on appeal). Here, however, Father does not claim that there is insufficient evidence to support the trial court's determination that he owed arrearages—only that the OAG's method of calculating child support was incorrect. Even if we were to construe Father's argument as a sufficiency challenge, i.e., that he was not in fact delinquent in his child support payments due to the OAG's allegedly incorrect calculations of the payment's due date, Father has failed to direct us to any evidence in the record to support that claim. Father also failed to provide the trial court with a payment record to dispute the OAG's assertion that he was delinquent in his payments.[16]

Accordingly, we find that this issue was not properly preserved for our review.

We overrule Father's Issue Five.

## IX. ATTORNEY'S FEES AWARD

In Issue Six, Father argues that the trial court abused its discretion in awarding attorney's fees to Mother because (1) Mother failed to make a proper request for attorney's fees in her pleadings and only did so for the first time at the de novo hearing, and (2) the trial court lacked the authority to award attorney's fees. We disagree with both arguments.

### A. Mother's request for attorney's fees

First, we note that Mother requested an award of attorney's fees in her response to the OAG's petition and in her responsive pleadings to Father's request for a de novo hearing. Father has not cited any authority for his contention that these requests were not sufficient to properly raise the issue of attorney's fees nor has he provided any explanation for why he believes Mother's requests were inadequate. Accordingly, we reject Father's claim that the issue of attorney's fees

---

[16] In fact, at the de novo hearing, the OAG indicated that it determined Father's delinquency in making his child support payments at the end of the preceding month.

was not properly before the court.

## B. The trial court had discretion to award fees under the Family Code

Second, we reject Father's claim that the trial court did not have the discretion to award attorney's fees to Mother under the Family Code. The Family Code expressly provides that a "court may render judgment for reasonable attorney's fees and expenses[.]" TEX. FAM. CODE ANN. § 106.002(a); *see also Gerges*, 601 S.W.3d at 65 (recognizing trial court's discretion to award reasonable attorney's fees and expenses in a case involving the parent-child relationship) (citing *Tucker v. Thomas*, 419 S.W.3d 292, 296 (Tex. 2013) ("Section 106.002, applicable to all SAPCRs, invests a trial court with general discretion to render judgment for reasonable attorney's fees[.]")); *see also Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996) ("The award of attorney's fees in a suit affecting the parent-child relationship is within the trial court's discretion.").

Father, however, cites to § 157.167(a), which relates to situations in which a movant files an enforcement action due to the respondent's failure to make child support payments, providing that "the court shall order the respondent to pay the movant's reasonable attorney's fees and all court costs in addition to the arrearages." TEX. FAM. CODE ANN. § 157.167(a). Father is correct that if this were the only provision in the Code allowing a court to enter an award of attorney's fees, Mother would not be entitled to such an award, as this was not an enforcement case. However, as set forth above, the Code expressly authorizes an award of attorney's fees under § 106.002(a) in virtually any SAPCR proceeding. And Father has not set forth any argument that the trial court abused its discretion in awarding attorney's fees under that provision.[17] Accordingly, we conclude that the trial court did not err in granting Mother's request for an award of attorney's fees.

---

[17] We note that Father does not contend that the amount of the attorney's fees the trial court ordered was unreasonable or that Mother's attorney did not properly prove the amount of his fees but only that the trial court lacked the discretion to enter any award whatsoever.

We overrule Father's Issue Six.

## X. Conclusion

We reverse and remand this matter to the trial court for the sole and limited purpose of determining whether Father has a legal duty to support to his fourth child, and if the court finds in the affirmative, it must determine the proper amount of Father's child support obligations under the Texas Family Code in light of that duty as well as enter any necessary factual determinations in support of its child support calculations. We affirm the trial court's order in all other respects.[18]

LISA J. SOTO, Justice

April 28, 2023

Before Rodriguez, C.J., Palafox, J. and Soto, J

---

[18] In light of our disposition of this appeal, we grant Appellant's motion to strike the previously filed motion to dismiss appeal and further grant Appellant's counsel's motion to withdraw as counsel for Appellant.