COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| | § | |
| IN THE INTEREST OF N.P.M., | § | No. 08-15-00172-CV |
| A CHILD. | § | Appeal from |
| | § | 383rd District Court |
| | § | of El Paso County, Texas |
| | § | (TC # 2011CM3808) |
| | § | |

## O P I N I O N

In a single issue, Roy Murillo contends the trial court abused its discretion by failing to enter a standard possession order pertaining to his possession of and access to N.P.M, his minor daughter. For the reasons that follow, we affirm.

### FACTUAL SUMMARY

Roy and Maria Soltero lived together from 2008 to 2011. They are the parents of N.P.M., who was born on January 7, 2010. Maria is the parent of another child who is not a subject of this suit, and Roy is the parent of five other children. Roy filed a suit affecting the parent-child relationship on May 17, 2011, requesting that the trial court appoint him the sole managing conservator of the child.

A hearing ensued on February 4, 2015. The trial court heard extensive evidence relating to Roy's relationship with his five other children and N.P.M. Maria testified that Roy and his son, R.M., would regularly get into fistfights and that he lacked any kind of relationship with his eldest daughter, S.M. Maria further testified that Roy received deferred adjudication for assaulting his son. Roy's third child, E.M., frequently ran away from home while in his custody. Maria discussed a specific incident where she witnessed an argument between Roy and E.M. Roy kicked a door, which then fell on E.M.'s head, cutting her forehead. After the argument, Roy kicked E.M. out of the house. Roy's fourth child, T.M., never visited him and he failed to show any interest in spending time with her. Roy's fifth child, R.M., spent the most time with him at his house. According to Maria, R.M. never had clean clothes or an adequate place to sleep. Finally, Maria testified regarding her concerns about N.P.M. living with Roy, explaining that she did not believe the child would be safe with him, and that whenever she did visit, she routinely came back with tangled hair, and dirty nails and clothes. Maria also discussed her own abusive relationship with Roy.

E.M. testified that Roy had never been violent with her. She had not seen Roy strike or threaten Maria. According to E.M., Maria had told her that her nickname when she was younger was "Lady Blaze," that she used to sell drugs, and that she had been arrested for it. Maria had offered her and her brother drugs and alcohol. E.M. then opined that she thought that Roy would be a good father to N.P.M. On cross-examination, E.M. did not recall that Roy had been arrested four times for assault, one of which was against her brother. She did acknowledge Roy's involvement with the Child Protective Services. Roy testified about N.P.M.'s relationship with his other five children, especially R.M. He discussed his parents' availability to take care of the child should he be working. Roy opined that he would be the better parent to have custody

because he could provide a stable environment for her; she would not move every year or have to change schools; and she would have health insurance. On cross-examination, counsel asked Roy about the five occasions in which CPS intervened because of alleged abuse or aggressiveness toward his children. Opposing counsel also questioned Roy about the four separate occasions he was arrested for assault, one of which was for assaulting his son, R.M. Roy denied receiving deferred adjudication for the assault of one his step-children. The hearing concluded with a discussion of visitation.

On April 17, 2015, the trial court entered its final order. It appointed Maria and Roy as joint managing conservators of N.P.M. with Maria having the exclusive rights to designate the primary residence of the child and to make educational and medical decisions. Relevant to this appeal, the trial court entered a custom possession order in which it ordered Roy to have possession of and access to N.P.M. as follows:

> On the first, third and fifth Saturdays of each month beginning at 9 a.m. and ending on the following Sunday at 12 p.m.;
>
> Every Thursday beginning at 5 p.m. and ending at 7:30 p.m.;
>
> During Spring Vacation on Monday, Wednesday and Friday from 10 a.m. to 5 p.m. if [Roy] is not working; and
>
> On the third and fourth weeks of July for summer vacation.

The trial court further ordered that the periods of possession applied to N.P.M. while she is under the age of eighteen years and not otherwise emancipated. Roy timely requested findings of fact and conclusions of law. In its findings, the trial court specified as to why the periods of possession deviated from the standard possession order:

> [Roy] has had an aggressive relationship with his son, [R.M.], to the point that they have had fist fights on more than one occasion.

3

[Roy] was arrested for assaulting his son, [R.M.], and his son was detained in Juvenile Court.

[Roy] has a daughter, [E.M.], who ran away from home while in his custody. [Roy] was not concerned or worried for the child's whereabouts resulting in CPS interventions.

[Roy] failed to provide his children with medical services when they need them.

[Roy] lacks the proper accommodations to exercise his visitations with his children.

[Roy's] lack of parenting skills was displayed at the time when he kicked the door which fell onto the 14 year old's forehead and hurt the child.

[Roy] has a history or pattern of committing family violence, involving the children and the required involvement of [the] Texas Department of Family and Protective Services.

[Roy] was charged with intent to cause bodily injury to a child by striking his step-child, the daughter of his prior wife, in the face and hands of [the] child. [Roy] was sentenced to 100 hours of community service, [and] community supervision for one year. He was ordered to participate in treatment directed to eradicate family violence and anger classes.

When [Roy] has visitations with [N.P.M.], the child subject of this suit, [the child] always came back with a dirty appearance and scratches.

The trial court further determined that Roy was physically, mentally, and sexually abusive toward Maria. Ultimately, the court found that Roy should be allowed limited access and possession with N.P.M., despite his history of committing family violence during the two years preceding the date of the filing of the suit or during the pendency of the suit.[1]

---

[1] Roy has overlooked sections of the Family Code that address the appointment of sole or joint managing conservators when, as the trial court found, there was credible evidence presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child. TEX.FAM.CODE ANN. § 153.004 (West 2014). Indeed, section 153.004(b) provides that the court may not even appoint joint managing conservators if such evidence is presented. Subsection (c) requires the court to consider the commission of family violence in determining whether to deny, restrict, or limit the possession of a child by a parent who is appointed as a possessory conservator. And subsection (e) creates a rebuttable presumption that it is not in the best interest of a child for a parent to have unsupervised visitation with the child in such circumstances.

On appeal, Roy raises a single issue, arguing that the trial court abused its discretion by entering a custom possession order that greatly deviated from the statutory standard possession order without a showing that the standard possession order was unworkable or inappropriate.[2]

## STANDARD POSSESSION ORDER

### Standard of Review

A trial court has broad discretion to fashion the terms of a decree related to custody, visitation, and possession. *In re Marriage of Swim*, 291 S.W.3d 500, 504 (Tex.App.--Amarillo 2009, no pet.); *In re Doe 2*, 19 S.W.3d 278, 281 (Tex. 2000); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). An appellate court may reverse the trial court's judgment only if it appears that the trial court abused its discretion in light of the record as a whole. *In re Marriage of Swim*, 291 S.W.3d at 504. A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *In Interest of Doe*, 917 S.W.2d 139, 141 (Tex.App.--Amarillo 1996, writ denied). We may not reverse the trial court's judgment simply because we disagree with the outcome. *In re Marriage of Swim*, 291 S.W.3d at 504. Rather, we must conclude that the decision lacked basis in fact or law or involved a misapplication of fact to law. *In re C.R.T.*, 61 S.W.3d 62, 65 (Tex.App.--Amarillo 2001, pet. denied).

### Applicable Law

In matters of conservatorship, the public policy in this State is to assure continuing contact between children and parents who have established the ability to act in their child's best interest, provide a safe, stable, and nonviolent environment for the child, and encourage parents to share in their child's development after separation or divorce. TEX.FAM.CODE ANN. §

---

[2] Maria has not favored us with a brief.

5

153.001(a)(1)-(3)(West 2014). When determining issues related to conservatorship or possession of and access to the child, the best interest of the child is the primary consideration. *Id.* at § 153.002; *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003).

Where both parents are appointed as the child's managing conservators, the trial court specifies the rights and duties that are to be exercised by each parent. TEX.FAM.CODE ANN. § 153.071. While the guidelines in the standard possession order are intended to guide courts as to the minimum possession for a joint managing conservator, there is a rebuttable presumption that the standard possession order provides the reasonable minimum possession of a child for a parent named as a joint managing conservator and that the order is in the child's best interest. *Id.* at §§ 153.251(a), 153.252(1), (2).

If there is sufficient evidence to rebut this presumption, however, the trial court may then deviate from the standard possession order. *Id.* at § 153.256; *see also Ohendalski v. Ohendalski*, 203 S.W.3d 910, 915 (Tex.App.--Beaumont 2006, no pet.)(holding no abuse of discretion to deviate from standard possession order based on finding of family violence); *Niskar v. Niskar*, 136 S.W.3d 749, 756 (Tex.App.--Dallas 2004, no pet.); *In re Walters*, 39 S.W.3d 280, 283 (Tex.App.--Texarkana 2001, no pet.)(affirming trial court's finding that standard possession order was not in child's best interest due to mother's alcoholism, which placed child in potentially harmful situations). When deviating from the standard possession order, the trial court may consider: (1) the age, developmental status, circumstances, needs, and the best interest of the child; (2) the circumstances of the managing conservator and of the parent named as a possessory conservator; and (3) any other relevant factor. TEX.FAM.CODE ANN. § 153.256. A reviewing court's holding that a trial court did not abuse its discretion implies that the evidence contained in the record rebutted the presumption that the standard possession order was

reasonable and in the child's best interest. *See Gray v. Gray*, 971 S.W.2d 212, 216 n.2 (Tex.App.--Beaumont 1998, no pet.), *citing In Interest of Doe*, 917 S.W.2d 139 (Tex.App.--Amarillo 1996, pet. denied).

If the trial court deviates from the standard possession order and orders less visitation than the guidelines require, it shall, upon timely request, state in the order the specific reasons for all deviations. TEX.FAM.CODE ANN. § 153.258; *In Interest of P.A.C.*, No. 14-14-00799-CV, 2016 WL 3213299, at *4 (Tex.App.--Houston [14th Dist.] Jun. 9, 2016, pet. filed); *Caldwell v. Garfutt*, No. 03-14-00019-CV, 2016 WL 105920, at *4 (Tex.App.--Austin Jan. 7, 2016, pet. filed). In determining the issues of conservatorship and possession of a child, the trial court is given wide latitude in determining the best interest of the child and will be reversed only for an abuse of discretion. *In re C.R.T.*, 61 S.W.3d at 65, *citing Gillespie*, 644 S.W.2d at 451. This is, in part, because the trial court is in a better position having faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent. *Coleman v. Coleman*, 109 S.W.3d 108, 111 (Tex.App.--Austin 2003, no pet.); *Martinez v. Molinar*, 953 S.W.2d 399, 403 (Tex.App.--El Paso 1997, no writ). When the testimony of witnesses is conflicting, we will not disturb the credibility determinations made by the fact finder and we will presume that it resolved any conflict in favor of the verdict. *See Coleman*, 109 S.W.3d at 111; *Minjarez v. Minjarez*, 495 S.W.2d 630, 632 (Tex.App.--Amarillo 1973, no writ).

## Analysis

Roy's custom possession order differed from the standard possession order by reducing: (1) his weekend visitation periods; (2) his period of access and possession during spring break; and (3) his period of possession during the summer. Additionally, Roy was not granted any

visitation for Thanksgiving, Christmas, and Father's Day. According to Roy, there is a complete absence of evidence to support the trial court's deviations.

The trial court restricted Roy's visitation because of his history or pattern of family violence and a history or pattern of past or present child neglect, emotional, and physical abuse directed toward his children and specifically N.P.M. The trial court heard testimony regarding Roy's history of aggression with his son R.M., which escalated into physical altercations, and ultimately an arrest for assault. The trial court also found credible the evidence of E.M.'s habit of running away from home while in Roy's custody. Several of these instances resulted in interventions by CPS and the Texas Department of Family and Protective Services. Roy was charged with intent to cause bodily injury to a child by striking his step-daughter in the face and hands. As a result, Roy was sentenced to 100 hours of community service, community supervision for one year, and he was ordered to participate in treatment directed to eradicate family violence and anger classes. The trial court also heard evidence of N.P.M's dirty and neglected appearance when in Roy's custody. Finally, the trial court also found that Roy was physically, mentally, and sexually abusive towards Maria in the presence of the children.

Given the evidence, we cannot say that the trial court abused its discretion by issuing a custom possession order. In fact, it is in full compliance with the requirements of the Family Code. We overrule Roy's point sole and affirm the judgment of the trial court.

October 5, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

8