

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

IN THE INTEREST OF

A.C.M., a Child.

§   No. 08-18-00014-CV

§   Appeal from the

§   383rd District Court

§   of El Paso County, Texas

(TC# 2008AG5651)

## **O P I N I O N**

This is an appeal from an order in a suit to modify the parent-child relationship after a de novo hearing. Appellant Armando Montez ("Father") appeals from that order insofar as it permits Appellee Melissa Soliz ("Mother") to designate the primary residence of the couple's minor son ("A.C.M.") without any geographic restriction. Father contends that the evidence is legally and factually insufficient to support various facts implicitly found by the trial court and that those erroneous findings resulted in an order that is not in the best interest of the child. We affirm.

### **BACKGROUND**

In July 2014, Father petitioned to modify a child support review order rendered on August 25, 2008.[1] As pertinent to this appeal, Father requested that the prior order be modified to appoint

---

[1] This order is not in our record but the parties do not dispute that Mother was given the exclusive right to designate the child's primary residence without any geographic restriction and Father was granted possession of and access to the child according to the standard possession order.

him as the person with the right to designate the primary residence of the child, A.C.M., and that the residence of the child be restricted to El Paso County, Texas. On August 28, 2014, the parties entered agreed temporary orders designating Mother as the person with the right to determine the child's primary residence, but restricting such residence to El Paso County, Texas. In addition, Father was granted possession of and access to the child according to the extended standard possession order. Mother was not represented by counsel at the time and testified that she felt pressured into signing the agreed order.

On September 15, 2016, an associate judge signed findings and recommendations including an assessment that it is in the best interest of the child to restrict his primary residence to El Paso County, Texas, and to grant Father possession of and access to the child according to the extended standard possession order. Mother then requested a de novo hearing in the district court. After conducting an evidentiary hearing (as discussed in further detail below), the district court ordered, among other things, that "[t]here will be no geographic restriction on the child's residence to El Paso County" and that "[Mother] shall be permitted to relocate a year from the date of this ruling." The court further ordered that Father "shall have possession of and access to the child according to the Standard Possession Order as set forth in the Child Support Review Order from August 22, 2008."

Father filed a request for findings of fact and conclusions of law, but no such findings and conclusions were timely filed and Father did not file a notice of past due findings and conclusions. *See* TEX. R. CIV. P. 296, 297. Father now appeals from that portion of the court's order permitting Mother to designate the child's primary residence without geographic restriction.

## ISSUES

Father raises six issues challenging the legal and factual sufficiency of the evidence to support the trial court's implicit findings that (1) Father had not consistently exercised his extended

2

visitation rights; (2) Father had never attended school hearings or conferences and rarely attended the child's doctor visits; and (3) Mother wanted to relocate to the Dallas/Fort Worth area for financial and educational reasons. In a seventh issue, Father asserts that these erroneous findings "cause[d] the court to deny Father's request to impose a geographical restriction because it was in the best interest of the child[.]"

## STANDARD OF REVIEW

A trial court's determination of what is in the best interest of the child "will be reversed only when it appears from the record as a whole that the court has abused its discretion." *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding principles, or when it fails to correctly analyze the law. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *In re M.V.*, 583 S.W.3d 354, 360 (Tex. App.—El Paso 2019, no pet.).

Determining whether the trial court abused its discretion involves a two-pronged inquiry: (1) did the trial court have sufficient information upon which to exercise its discretion? and (2) did the trial court err in its application of discretion? *In re M.V.*, 583 S.W.3d at 361; *In re T.M.P.*, 417 S.W.3d 557, 562 (Tex. App.—El Paso 2013, no pet.). In the absence of findings of fact and conclusions of law, we imply all necessary findings of fact to support the trial court's order. *In re M.V.*, 583 S.W.3d at 361; *In re T.M.P.*, 417 S.W.3d at 563. If, however, the appellate record includes a reporter's record, the trial court's implied findings may be challenged for legal and factual sufficiency. *In re M.V.*, 583 S.W.3d at 361; *In re T.M.P.*, 417 S.W.3d at 563. Such sufficiency challenges are considered as factors relevant to whether the trial court abused its discretion rather than independent grounds of error. *In re M.V.*, 583 S.W.3d at 361; *In re T.M.P.*, 417 S.W.3d at 562.

3

Whether there is legally sufficient evidence is determined by "view[ing] the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). "When reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence, and will set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust." *In re M.V.*, 583 S.W.3d at 361. If there is a conflict in the evidence, we must presume that the fact finder resolved the inconsistency in favor of the order if a reasonable person could do so. *Id.* If there is evidence of a substantive and probative character supporting the trial court's decision, we cannot conclude that the court abused its discretion in reaching that decision. *Id.*

## DISCUSSION

### *Modification of a geographic residency restriction*

A court may modify an order providing the terms and conditions of conservatorship if (1) the modification would be in the best interest of the child and (2) the circumstances of the child, a conservator, or other person affected by the order have materially and substantially changed since the date of the rendition of the prior order. TEX. FAM. CODE ANN. § 156.101; *see In re T.M.P.*, 417 S.W.3d at 562. This appeal concerns only the "best interest of the child" prong of the analysis.

Whether it is in a child's best interest to modify a geographic residency restriction is generally guided by the public policy considerations of "(1) assur[ing] that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child; (2) provid[ing] a safe, stable, and nonviolent environment for the child; and (3) encourag[ing] parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage." TEX. FAM. CODE ANN. § 153.001; *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002).

4

The supreme court in *Lenz* identified several factors that bear on whether it is in a child's best interest to lift a geographic restriction to accommodate a parent's desire to relocate. *In re M.V.*, 583 S.W.3d at 360 (citing *Lenz*, 79 S.W.3d at 15-18). Those factors include:

> (1) the parent's good-faith reasons for the proposed move; (2) the effect the move would have on the economic, educational, health, and leisure opportunities for the custodial parent and the child; (3) the positive impact the move would have on the custodial parent's emotional and mental state, with beneficial results to the child; (4) whether the move would improve the custodial parent's financial situation and ability to provide a better standard of living for the child; (5) whether the child's special needs or talents could be accommodated at the new location; (6) the child's relationship with and presence of extended family and friends, and the effect the move would have on those relationships; (7) the effect the move would have on the noncustodial parent's visitation and communication with the child, and his ability to maintain a full and continuous relationship with the child; (8) whether the noncustodial parent has the ability to relocate; and (9) whether a visitation schedule could be arranged that would allow the noncustodial parent to continue a meaningful relationship with the child following the move.

*Id.*[2]

Father contends on appeal that the evidence is legally and factually insufficient to support the trial court's implied findings in three respects: (1) Father did not consistently exercise his extended visitation rights; (2) Father did not attend the child's school conferences and doctor's appointments; and (3) Mother wants to relocate for financial and educational reasons. We will address each in turn.

*Evidence concerning Father's exercise of extended visitation rights*

By order dated August 25, 2008, Father was granted visitation according to the standard possession order. *See* TEX. FAM. CODE ANN. § 153.312. Pursuant to an agreed order dated August 28, 2014, Father was granted visitation according to the extended standard possession order. As a

_____

[2] Father urges this Court to also apply factors identified by the supreme court in *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976), as bearing on the best interest of the child. Of the nine enumerated factors, our record contains evidence pertaining to only three: the child's needs, a parent's acts or omissions, and any excuse for those acts or omissions. *Id.* at 372. Those factors overlap with the *Lenz* factors and are addressed in our discussion under *Lenz*.

result, during the school year, Father was entitled to possession of A.C.M. on the first, third, and fifth weekends of every month (from Thursday after school until Monday morning) and Thursday after school until Friday morning on all other weeks. In addition, he was entitled to thirty consecutive days with the child during the summer.

Mother testified that Father did not take the child for weekends, vacations, or the summer, and did not exercise his extended possession rights until directed to do so by an associate judge in 2016. She stated that Father would see the child occasionally but did not follow the terms of the possession order. Mother acknowledged that, since being chastised by the associate judge, Father had exercised his extended possession rights without any problems. She also acknowledged that, since that time, she had sometimes asked Father to forego his extended time with the child to accommodate her and that he acquiesced to those requests. She noted, though, that she did not make such requests prior to the time Father was lectured by the associate judge because he was not exercising his visitation rights anyway and had not been for a long time.

Father, on the other hand, testified that he did exercise his visitation rights under the August 2014 agreed order except for a brief period in 2015. In November 2015, Mother filed a petition for a protective order on A.C.M.'s behalf, alleging that Father had struck the child with a belt. Father denied ever striking the child but testified that he did not exercise his possession rights during the pendency of the protective order proceedings because he did not want to be in trouble with the law.

Once the petition for protective order was denied, Father tried to exercise his rights again but A.C.M. did not want to go with him. Father testified that he would not force the child to go with him until he was rebuked by the associate judge for not exercising his visitation rights. After that, Father insisted that A.C.M. go with him during his possessory periods and the relationship

6

between Father and the child quickly returned to normal. Father stated that he has not missed a visit with his son since that time, except when he has accommodated Mother's requests to adjust the possession schedule. He also stated that he did not exercise his right to have A.C.M. for thirty consecutive days in the summer because he and Mother agreed to maintain the regular schedule so that neither of them had to go for thirty days without seeing the boy.

The evidence concerning Father's exercise of his rights to possession of A.C.M. is conflicting. We recognize that "[t]he trial court is in the best position to observe the witnesses and their demeanor[.]" *In re T.M.P.*, 417 S.W.3d at 563; *see In re M.V.*, 583 S.W.3d at 361. For this reason, we will not disturb the credibility determinations made by the trial court but, rather, will presume that the court resolved any conflict in favor of its ruling. *In re N.P.M.*, 509 S.W.3d 560, 565 (Tex. App.—El Paso 2016, no pet.); *see In re M.V.*, 583 S.W.3d at 361.

The trial court here noted the conflicts in the witnesses' testimony and described Father's visitation history as "sketchy at best[.]" Crediting Mother's testimony, as the trial court was entitled to do, there is legally and factually sufficient evidence to support an implied finding that, even apart from those instances in which Father accommodated Mother's requests to forego visitation, Father had not consistently exercised his visitation rights. Issues One and Two are overruled.

*Evidence concerning Father's attendance at school conferences and medical appointments*

Both parents testified that A.C.M. has had behavioral issues at school. Mother testified that Father has never attended a school hearing or conference to address those issues. Father testified that the meetings were arranged between Mother and A.C.M.'s teacher, and that he would have attended if he had been invited. As for medical appointments, Mother testified that she has

7

taken the child to every doctor's appointment. Father testified that he has taken the boy to the doctor and the dentist a few times.

Again, it was within the province of the trial court to resolve the conflicts in the testimony. *See In re N.P.M.*, 509 S.W.3d at 565. Giving credence to Mother's testimony, there is legally and factually sufficient evidence to support an implied finding that Father rarely, if ever, attended A.C.M.'s school conferences and medical appointments. Issues Three and Four are overruled.

*Evidence concerning Mother's reasons for relocating*

Mother testified that she would like to relocate with the child to the Dallas/Fort Worth area for three reasons. First, Mother's mother, sister, brother-in-law, and nieces live in that area, and another sister is planning to move there. Mother's mother works nights, so she would be available to keep A.C.M. after school and help him with his homework. A.C.M. could thus be with family instead of being in daycare. At the time of the hearing, A.C.M. was at daycare from 2:45, when school let out, until 5:45, when Mother picked him up after work. There is also evidence that Mother's fiancé sometimes picks up A.C.M. after he leaves work at 4.

Mother's second reason for relocating is financial. She testified that she makes $11 per hour as a certified medical assistant, but could make $19 per hour with the same company by transferring to Dallas. Mother's fiancé testified that there are also better job opportunities for him in the Fort Worth area than in El Paso.

Mother noted that one reason she needs to improve her earnings is because Father has not been paying court-ordered child support.[3] Father admitted that he has not paid the proper amount

---

[3] Mother filed a counterpetition for modification, seeking to increase Father's child support obligation. Father did not appeal the ruling granting that increase.

8

of child support but blamed the deficiency on a delay in paperwork to deduct child support from his paycheck.

Finally, Mother testified that she wants to relocate so that she can obtain a nursing degree. While she acknowledged that there is a nursing school in El Paso, she explained that, in Dallas/Fort Worth, she would have the support of family to help with A.C.M. so she could work and go to school part-time.

The evidence is legally and factually sufficient to support an implied finding that Mother desires to relocate for financial and educational reasons, as well as to have the support of her immediate family. Issues Five and Six are overruled.

*Best interest of the child*

Having disposed of Father's specific sufficiency challenges, we must still address the ultimate issue of whether the trial court abused its discretion by concluding that it is in the best interest of the child to lift the geographic restriction on his primary residence. On this issue, we revisit the factors identified by the supreme court in *Lenz*. *See In re M.V.*, 583 S.W.3d at 360 (citing *Lenz*, 79 S.W.3d at 15-18).

As discussed above, Mother presented evidence that she wants to relocate to Dallas/Fort Worth because she could earn more money and she would have support from her immediate family which would allow her to pursue a nursing degree. While she did not testify to a firm job offer awaiting her at the end of the school year, she did state that she could transfer with her present employer at any time. This testimony supports lifting the geographic restriction under the first, second, third, fourth, and sixth *Lenz* factors. *See id.* ("(1) the parent's good-faith reasons for the proposed move; (2) the effect the move would have on the economic, educational, health, and leisure opportunities for the custodial parent and the child; (3) the positive impact the move would

9

have on the custodial parent's emotional and mental state, with beneficial results to the child; (4) whether the move would improve the custodial parent's financial situation and ability to provide a better standard of living for the child; . . . [and] (6) the child's relationship with and presence of extended family and friends, and the effect the move would have on those relationships").

The fifth *Lenz* factor is whether the child's special needs or talents could be accommodated at the new location. *Id.* A.C.M. has problems reading but is an accomplished baseball player. Mother's fiancé testified that he believes there are better schools and more competitive baseball teams in Dallas/Fort Worth than in El Paso, but he did not offer any factual basis for those beliefs. Neither Mother nor Father opined on the issue. We conclude that this factor is neutral in determining whether relocation is in the best interest of the child.

The remaining three *Lenz* factors concern the impact of relocation on the noncustodial parent's contact with the child. *See id.* ("(7) the effect the move would have on the noncustodial parent's visitation and communication with the child, and his ability to maintain a full and continuous relationship with the child; (8) whether the noncustodial parent has the ability to relocate; and (9) whether a visitation schedule could be arranged that would allow the noncustodial parent to continue a meaningful relationship with the child following the move").

Concerning the eighth *Lenz* factor, Mother testified that, during the course of their relationship, Father and Mother had planned to move to Dallas/Fort Worth as a couple. This indicates that Father, at least at one time, was *willing* to relocate. But there is no evidence of Father's present *ability* to relocate. We therefore conclude that the eighth *Lenz* factor is neutral in our analysis.

As to Father's ability to maintain a continuous and meaningful relationship with the child, we note that both parents testified that they have been cooperative with one another and that both

10

are primarily interested in what is best for their son. Mother testified that, if she relocates to Dallas/Fort Worth, Father could see A.C.M. during holidays and summers. She stated that she would offer extra visitation during the summers and would help get the child to El Paso. Mother also testified that she does not want to take the child away from his father, she wants Father to have visitation, and she is not trying to hurt Father because she "wouldn't want that."[4] The record does not demonstrate any reason why A.C.M.'s parents would not continue to cooperate after relocation to ensure that the child has a meaningful relationship with both.

In addition to evidence indicating that Father will have the ability to maintain a meaningful relationship with A.C.M., we must also consider the evidence that Father has not consistently exercised his visitation and possession rights in the past. While Father was more diligent about seeing his son after being chastised by the associate judge, the fact remains that his visitation history is, as described by the trial court, "sketchy at best[.]" The trial court was entitled to take this history into account when weighing the impact on Father of allowing Mother to relocate with the child to Dallas/Fort Worth. The evidence, as a whole, supports the conclusion that Father will be able to maintain a meaningful relationship with A.C.M. if he so desires. The seventh and ninth *Lenz* factors thus support the court's decision to lift the geographic restriction.

Each of the applicable *Lenz* factors supports the trial court's conclusion that lifting the geographic restriction on Mother's ability to designate A.C.M.'s primary residence is in the best interest of the child. The court therefore did not act arbitrarily, unreasonably, or without reference

---

[4] Mother did at one point move to restrict Father's visitation and asked that he be given a hair follicle test to detect drug use. Mother testified that she was concerned for her son because Father had used marijuana daily during their relationship. Father admitted to using marijuana but testified that he last used that drug in 2014. Father passed the hair follicle test and the request to restrict his visitation was denied.

to any guiding principles. *Downer*, 701 S.W.2d at 241-42; *In re M.V.*, 583 S.W.3d at 360. In short, the court did not abuse its discretion.

As a final matter, we address Father's assertion that an abuse of discretion is evidenced by the trial court's comment that Mother did not present a "compelling" case for relocation. Father contends that this comment demonstrates the court's belief that the evidence justifying relocation is legally and factually insufficient. This is not a fair reading of either the court's comment or its import.

After the close of evidence, the trial court, which was conducting a de novo hearing following a ruling by an associate judge imposing the geographic restriction, inquired whether the circumstances presented to the associate judge differed from those that were presented at the de novo hearing. In fact, the circumstances were different. At the time of the hearing before the associate judge, Mother was contemplating an immediate move because both she and her fiancé had job offers in Dallas/Fort Worth. By the time of the de novo hearing, the school year was about to begin and Mother decided that it would be best not to move A.C.M. until the end of the school year. After hearing this explanation, the trial court merely noted that, at the time of the hearing before the associate judge, the request to lift the geographic restriction was "even more compelling" and, at the time of the de novo hearing, "it isn't as compelling."

We do not read the record as supporting Father's assertion that the trial court believed that Mother had not established legitimate reasons for seeking to relocate with A.C.M. Rather, the record reflects that the court simply determined that there was no immediate time pressure to decide whether relocation would be permitted because the desired move to Dallas/Fort Worth was not imminent. This is evidenced by the court's proposal to defer ruling on the request to lift the geographic restriction until a time closer to the end of the school year. When Father pressed for

12

an immediate ruling, the court ruled that the geographic restriction would be lifted and that Mother would be permitted to relocate in a year. For all of the reasons discussed above, that ruling is supported by legally and factually sufficient evidence and does not constitute an abuse of discretion. Issue Seven is overruled.

## CONCLUSION

The record establishes that the trial court had sufficient information concerning the reasons for Mother's desire to relocate and the impact relocation would have on her, the child, and Father to exercise its discretion. *See In re T.M.P.*, 417 S.W.3d at 562. The record further establishes that, considering the benefits to Mother and, ultimately, to A.C.M., as well as any impairment of Father's contact with the child, the trial court did not err in its application of discretion. *See id.* The order lifting the geographic restriction on Mother's ability to designate A.C.M.'s primary residence is affirmed.


GINA M. PALAFOX, Justice

December 23, 2019

Before Alley, C.J., Rodriguez, and Palafox, JJ.

13