

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-24-00342-CV

---

In the Interest of I.N.A.M., a Child

---

On Appeal from the 65th Judicial District Court
El Paso County, Texas
Trial Court No. 2022DCM0109

---

## MEMORANDUM OPINION

Mother appeals from a default final order in a suit affecting the parent-child relationship, wherein the trial court appointed Father as sole managing conservator of the parties' child, I.N.A.M., restricted Mother's possession to supervised visitation, and imposed other related orders.[1] On appeal, Mother challenges the trial court's rulings on multiple grounds. Finding no error, we affirm.

---

[1] To protect the child's identity, we use an alias, I.N.A.M., and refer to the parties by their relationship to the child. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(a).

# I. BACKGROUND

On January 10, 2022, the Texas Attorney General (AG) filed an Original Petition in Suit Affecting Parent-Child Relationship asking the trial court to appoint appropriate conservators and order appropriate support for I.N.A.M., a child approximately 4 months old at the time. The petition alleged that I.N.A.M. resided with Mother. Father, who appeared through counsel, subsequently filed a counter-petition asking the trial court to appoint him and Mother as joint managing conservators with neither conservator granted the exclusive right to designate I.N.A.M.'s primary residence but asking the court to order Mother to pay him support. Alternatively, he asked that he be appointed as I.N.A.M.'s primary conservator with the exclusive right to determine the child's primary residence within El Paso County, Texas.

Mother, who was then represented by counsel, next sought to modify temporary orders entered on August 16, 2022.[2] She alleged that, due to a change in circumstances, the child possession and access arrangement granted by the trial court had become "unworkable and inappropriate." On that same date, Mother also filed a counter-petition in which she asked to be appointed sole managing conservator and for the trial court to deny, restrict, or limit Father's possession of I.N.A.M. In the alternative, Mother requested that Father's periods of visitation be supervised because he had a history or pattern of committing family violence during the two years preceding the date of the filing of the suit. She additionally requested Father be ordered to pay her support for the child.

On September 6, 2022, following a hearing, the associate court signed a temporary order (1) appointing Father and Mother as joint managing conservators of I.N.A.M., (2) granting Mother

---

[2] Our record does not contain a file stamped copy of this order. Mother attached a copy of an interim order dated August 16, 2022, to one of her later filed pleadings, but the order is not signed or filed stamped.

2

the right to "maintain the child's primary residence in" El Paso County, (3) setting a possession and access schedule, and (4) ordering Father to pay medical and child support. The next day, Mother filed a motion requesting a de novo hearing and asking the trial court to review and reform the associate court's temporary orders on conservatorship and temporary possession and access. Father also filed a motion requesting a de novo hearing stating he was appealing the associate court's orders on possession and access, temporary conservatorship, and child support and medical support.

The district court held a hearing on October 4, 2022, where all parties were present.[3] The hearing was originally set as a de novo hearing. Our record does not contain a transcript of this hearing. Immediately following the hearing, Father filed a motion for writ of attachment in which he alleged:

> A De Novo Hearing was held via Zoom on October 4, 2022. [Mother] made it very clear to the Court that she would not follow the Court's Order and that she would keep the child no matter what was ordered. [Mother] yelled and cursed at the Court and Counsel. Her behavior towards the Court and her disregard for the child's safety is alarming and of great concern.

The same day, the district court granted the motion and issued a writ, "commanding the sheriff or any constable within the State of Texas to attach the body of I.N.A.M. and present the child to the 65TH District Court during business hours . . . if before 5:00 p.m. or to [Father] . . . if after 5:00 p.m." The trial court ordered that a hearing would be held to determine the custody of I.N.A.M. "upon the presentment of the child to the Court." The trial court also granted Mother's counsel's previously filed motion to withdraw.

The following day, the trial court signed temporary orders appointing Father as temporary sole managing conservator of I.N.A.M. with the exclusive right to designate I.N.A.M.'s primary

---

[3] Prior to the hearing, the trial court signed an order transferring the case from the 383rd Judicial District Court to the 65th Judicial District Court.

3

residence within El Paso County, Texas. The trial court appointed Mother as temporary possessory conservator and granted her the "right to possession and access to I.N.A.M. for supervised visits at Project Amistad with one visit per week for two hours depending on Project Amistad['s] availability." The trial court ordered Mother to pay child support to Father in the amount of $228.56 each month.

On October 7, 2022, Father filed a Petition for Writ of Habeas Corpus and Attachment in which he alleged Mother was illegally restraining I.N.A.M. from his possession and Mother was in contempt due to her refusal to return the child to the court and him. He asked that a writ issue to compel the return of I.N.A.M. to his possession. The trial court signed an order for writ of habeas corpus for child ordering a writ issue directing Mother to present I.N.A.M. to the court and that Mother appear at a hearing, to respond to the writ.

Representing herself, Mother filed an amended counter-petition alleging Father had a history of violence and requesting she be appointed the primary and sole managing conservator with the exclusive right to designate I.N.A.M.'s primary residence, "where she deems fit, and where her primary support system will be located, now or in the future." She additionally requested Father's parental rights be terminated.[4] Mother also filed a motion to vacate or nullify the temporary order alleging that it was "procured by fraud and without jurisdiction[.]" Her complaint centered on the allegation that a de novo hearing scheduled for October 4 was not heard but another hearing took place without due process.

---

[4] Mother also filed a separate petition to terminate Father's parental rights. She later filed a notice to non-suit this petition. The trial court signed an order in which it approved the non-suit and stating the pleadings regarding the SAPCR remained pending.

Mother requested a jury trial and proceeded to file other pleadings before the trial court.[5] The trial court set the case for a jury trial on June 10, 2024. On the day of trial, the AG, Father, and Father's counsel were all present. Mother did not appear. The trial court noted at the start that Mother forfeited her right to a jury trial by not appearing and asked the remaining parties whether they wanted the jury to try the issues in the case. Father indicated he did not request a jury and intended to proceed on a default judgment. The trial court then dismissed the panel and proceeded with a final hearing. Father testified as the sole witness. At the conclusion of the hearing, the trial court stated it would grant judgment in Father's favor, the temporary orders would be the final orders of the court, and it would grant a judgment in Father's favor for unpaid child support.

Following the hearing, Mother continued to file numerous pleadings in the trial court challenging the court's jurisdiction, seeking dismissal of the SAPCR, and seeking recusal. On July 10, 2024, the trial court signed the default final order in which the court noted the AG and Father had appeared in person and Mother "made a general appearance, and after due notification of the trial setting, failed to appear and has defaulted." The court found its orders to be in I.N.A.M.'s best interest and, among other things, it: (1) appointed Father sole managing conservator and Mother possessory conservator of I.N.A.M., (2) granted Father the exclusive right to designate I.N.A.M.'s primary residence without regard to geographic area, (3) ordered Mother to pay child support to Father, and (4) granted judgment in favor of Father on child support arrears for the period of October 4, 2022, through June 30, 2024, in the amount of $4,571 and ordered Mother to pay the judgment in full on or before July 1, 2024. Regarding possession, the court ordered that Mother "shall have [the] right to possession and access to I.N.A.M. for supervised visits at Project Amistad

---

[5] Mother appealed an order denying her motion to recuse the trial judge in this Court. On February 27, 2023, we dismissed her appeal for want of jurisdiction. *Interest of I. N. A. M.*, No. 08-23-00062-CV, 2023 WL 2263026, at *1 (Tex. App.—El Paso Feb. 27, 2023, no pet.) (mem. op.).

with one visit per week for two hours depending on Project Amistad['s] availability." Both Father and Mother were ordered to register at Project Amistad before July 1, 2024, at 5:00 p.m.

After filing recusal motions, objections, and request for findings of fact and conclusions of law, Mother filed a notice of appeal.

## II. ISSUES AND BRIEFING STANDARDS

Mother presents seven issues on appeal.[6] First, Mother contends the trial court abused its discretion by naming Father as sole managing conservator of I.N.A.M. and Mother as a possessory conservator. Second, Mother argues the trial court erred by failing to obtain sufficient evidence, make specific findings, or rebut a statutory presumption that disqualified Father from being appointed as sole or joint managing conservator due to an active protective order for family violence. Third, Mother contends the trial court abused its discretion by restricting her possession to two hours of supervised visitation per week. Fourth, Mother maintains the trial court erred by failing to enter specific and enforceable orders regarding her access to I.N.A.M. Fifth, Mother argues the trial court abused its discretion by issuing a default final order based on void ab initio temporary orders. Sixth, Mother contends the trial court abused its discretion by proceeding without both personal and subject-matter jurisdiction. And finally, Mother argues the trial court erred by signing a default final order that included provisions neither raised or decided during trial nor requested in Father's pleadings.

We begin with a brief review of briefing principles implicated by this appeal. Mother appears as a self-represented party; thus, we are "mindful of our duty to construe [her] [brief] 'reasonably, yet liberally, so that the right to appellate review is not lost by waiver' and to 'reach the merits of [her] appeal whenever reasonably possible.'" *Conroy v. Wilkerson*, 626 S.W.3d 24,

---

[6] Father did not file a brief in response.

6

30 (Tex. App.—El Paso 2021, no pet.) (quoting *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (per curiam)). Nevertheless, the law is well-settled that a self-represented party must comply with all applicable procedural rules and properly present her case on appeal. *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.). For that reason, we are not inclined to make allowances or apply different standards simply because Mother is self-represented and acts without an attorney. *See id.*; *Jonson v. Duong*, 642 S.W.3d 189, 193 (Tex. App.—El Paso 2021, no pet.) ("To hold otherwise would be to give [self-represented] litigants an unfair advantage over parties represented by counsel."). We also note that a substantial portion of Mother's brief contains factual allegations that are not supported by citations to the appellate record. Ordinarily, "we do not consider factual assertions that appear solely in briefs and are not supported by the record." *Marshall v. Hous. Auth. of City of San Antonio*, 198 S.W.3d 782, 789 (Tex. 2006); *see also* Tex. R. App. P. 38.1(g); *Aguilar v. 21st Century Res., Inc.*, 349 S.W.3d 32, 36 (Tex. App.—El Paso 2010, no pet.) ("[S]tatements in a brief unsupported by the record will not be considered on appeal[.]"). Similarly, we do not consider "[b]are assertions of error, without argument or authority[.]" *Washington v. Bank of New York*, 362 S.W.3d 853, 854 (Tex. App.—Dallas 2012, no pet.). In other words, when an appellant fails to adequately brief a complaint, she waives the issue on appeal. *Id*.

With these principles in mind, we first address Mother's jurisdictional challenges.

### III. JURISDICTIONAL ISSUES

Combining her fifth and sixth issues, Mother asserts the trial court lacked personal jurisdiction over her, and thus, it abused its discretion in rendering a default final order against her. Liberally construing Mother's briefing, she argues the trial court's temporary order was void ab initio because she was never served with the "modification proceeding" and she was not given

notice of "the modification hearing itself" held on October 4. She complains that she was falsely led to believe she was attending "a properly scheduled de novo hearing" but it was improperly substituted with a hearing on an improperly filed modification case.

"Personal jurisdiction is composed of two elements: (1) the defendant must be amenable to the jurisdiction of the court, and (2) the plaintiff must validly invoke that jurisdiction by valid service of process on the defendant." *Guardianship of Fairley*, 650 S.W.3d 372, 380 (Tex. 2022). "A claim of a defect in service of process challenges the trial court's personal jurisdiction over the defendant." *Livanos v. Livanos*, 333 S.W.3d 868, 874 (Tex. App.—Houston [1st Dist.] 2010, no pet.). "A judgment rendered in a case against a party who has neither been served nor received notice is 'constitutionally infirm[.]'" *In re Miramontes*, 648 S.W.3d 590, 606 (Tex. App.—El Paso 2022, no pet.) (citation omitted).

Here, the record shows that Mother generally appeared in the trial court proceeding without objection by filing pleadings—to include a counter-petition, a motion to modify temporary orders, and a request for de novo hearings—and by appearing virtually and by counsel. *See Guardianship of Fairley*, 650 S.W.at 380, 386 (recognizing that a party may waive his right to challenge personal jurisdiction by entering a general appearance in the case and consenting to the court's authority over him). Following a hearing where both Mother and Father appeared virtually and by counsel, the associate judge of the 383rd district court entered temporary orders on September 6, 2022. Counsel for both Mother and Father approved the temporary orders as to form. Afterwards, they both filed separate requests for a de novo hearing. A de novo hearing was set for October 4, 2022, via Zoom. Although our record lacks a transcript of said hearing, the trial court's order states that "[Mother's] Motion for Temporary Orders was heard by this Court on October 4, 2022."

8

Moreover, although Mother contends that she was never served with process in the modification suit, we conclude that no modification suit was in fact filed by Father or the AG. Initially, we note that the district clerk's office opened three different tracks under trial cause number 2022DCM0109: a modification track, termination track, and AG track. However, on review of the record, it is clear that a clerical error led to the opening of a modification track as only an original SAPCR case was filed by the AG and only one final order has been entered. In other words, as Mother identifies, there was no existing final order in place to serve as a basis for modification. *See* Tex. Fam. Code Ann. § 156.001 ("A court with continuing, exclusive jurisdiction may modify an order that provides for the conservatorship, support, or possession of and access to a child."); Tex. Fam. Code Ann. § 155.001(d) ("Unless a final order has been rendered by a court of continuing, exclusive jurisdiction, a subsequent suit shall be commenced as an original proceeding.").

For these reasons, we conclude the trial court's temporary order was not void for lack of personal jurisdiction as Mother made a general appearance and was present at the October 4 hearing. To the extent Mother's complaint may further be construed to challenge the trial court's authority to modify temporary orders, we conclude that she has provided no authority for her assertion. Still, a trial court unquestionably has authority to modify temporary orders until the issuance of a final decree. *See* Tex. Fam. Code Ann. § 105.001(a).

We overrule Mother's fifth and sixth issues.

## IV. CONSERVATORSHIP

In her first and second issues, Mother asserts the trial court abused its discretion by naming Father as sole managing conservator of I.N.A.M., and by concurrently naming her as a possessory conservator, where the court lacked sufficient evidence rebutting the presumption that appointment

9

of the parents of a child as joint managing conservators is in the child's best interest. Relatedly, she further contends there was sufficient evidence to rebut a statutory presumption that disqualified Father from being appointed as sole or joint managing conservator due to an active protective order for family violence.

## A. Standard of review

A trial court's decisions regarding conservatorship are evaluated under an abuse-of-discretion standard. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). "In determining the issues of conservatorship and possession of a child, the trial court is given wide latitude in determining the best interest of the child and will be reversed only for an abuse of discretion." *In Int. of N.P.M.*, 509 S.W.3d 560, 564 (Tex. App.—El Paso 2016, no pet.). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to guiding rules or principles. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011).

Under an abuse-of-discretion standard, legal and factual sufficiency are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *In re T.M.P.*, 417 S.W.3d 557, 562 (Tex. App.—El Paso 2013, no pet.). Review in this context is two-pronged: a reviewing court determines whether the trial court (1) had sufficient evidence on which to exercise its discretion and (2) erred in applying its discretion. *Id.* Traditional sufficiency review comes into play under the first prong. *Id.* We then decide whether, based on the evidence adduced at trial, the trial court made a reasonable decision. *Id.* at 563. The trial court, as the factfinder, is in the best position to observe and assess the witnesses, their demeanor, and their credibility. *Int. of B.G.J.*, 702 S.W.3d 886, 908 (Tex. App.—Eastland 2024, no pet.); *N.P.M.*, 509 S.W.3d at 564–65.

**B. Applicable law**

Section 153.131 of the Texas Family Code provides that a parent shall either be appointed as a sole or joint managing conservator unless there is a finding that such appointment "would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." Tex. Fam. Code Ann. § 153.131(a). There is a "rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child." *Id.* § 153.131(b). It continues that a "finding of a history of family violence involving the parents of a child removes the presumption." *Id.* Based on this section, the trial court is required to presume that the appointment of a parent as sole managing conservator or both parents as joint managing conservators is in a child's best interest until evidence is presented to rebut this presumption. *In Int. of K.S.*, 492 S.W.3d 419, 427 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

**C. Analysis**

Mother contends the record lacks sufficient evidence to support the trial court's ruling in favor of naming Father as sole managing conservator because he failed to provide any evidence that she engaged in any act or omission that would significantly impair I.N.A.M.'s physical health or emotional development. She further contends that there was sufficient evidence to rebut a statutory presumption that disqualified Father from being appointed as sole or joint managing conservator due to an active protective order for family violence.

At the final default hearing, Father appeared as the sole witness. He testified that, although he had not seen I.N.A.M. since October 2022, he nonetheless had stability and resources to care for I.N.A.M. that were lacking with her Mother. He particularly noted that he had his own home with a bedroom for I.N.A.M., he had been employed for the past year as a full-time heavy diesel

11

mechanic, and his immediate family all live in El Paso. Father also described concerns he had about the child's wellbeing. First, he explained that after entry of the temporary order giving him temporary sole conservatorship, a police detective went to pick up I.N.A.M. from Mother and when she saw the detective walking up to her car, "she panicked, and drove off, dragging the detective outside the vehicle." Father was not present at the incident but stated the detective recounted the incident to him and said I.N.A.M. was in the car at the time. He testified that Mother had two outstanding arrest warrants but he gave no other details on the matter.

Father explained another incident where he stated Mother had invited him to her apartment to visit with I.N.A.M. He testified that while he was taking care of the child, another man came to the apartment. He could soon hear Mother and the male visitor having sexual intercourse in the nearby bedroom. When he tried to leave, Mother blocked the doorway pleading for him to care for I.N.A.M. while she "kept on having fun with another male in the other room." After he called his family, they called the police. As Father put I.N.A.M. in his car, he described that Mother tried to remove her by "yank[ing] her by the arm putting [her] in tears."

Father also said he was concerned for I.N.A.M.'s safety because Mother would not disclose her current whereabouts and he did not know if she remained in the State of Texas. Father testified that I.N.A.M. would not be in danger if the court continued the current visitation that allowed Mother weekly two-hour supervised visits.

The AG asked Father about a protective order entered against him, which was admitted into evidence. The protective order was granted on September 28, 2022, and it remained in effect until September 27, 2024. The order stated the trial court had found "reasonable grounds to believe that [Mother was] the victim of indecent assault." The order prohibited Father from communicating with Mother or anyone in her family "in a threatening or harassing manner," and

from going within 200 yards of the residence or place of employment or business of Mother or a member of her family or household, "except for exchange of the child for any period of possession granted herein[.]" When explaining the incident that led to the protective order, Father testified: "[w]e did have intercourse, but, no, I did not sexually assault her or do any type of means that I did not have consent for." Father also noted he had requested a de novo hearing on the protective order but it was never resolved because Mother refused to come to court. He further testified there was no protective order in place regarding his daughter, nor was there a CPS case pending against him, and he had no outstanding arrest warrants.

Father also testified that Mother had said, at the October 4 hearing, that she would not follow any court order. He additionally confirmed that Mother called both Father's counsel and the trial court judge a "bitch." He noted that Mother's behavior had not changed since October 2022, and he thought Mother believed herself to be above the court or beyond its reach. Father also testified he had concerns about Mother's mental health. He described that Mother's attitude changes very quickly and she often "flip[s] the story inside out." He also claimed that she is a drinker who goes out to bars frequently; and even when she did not drink, she met with men and brought them back to her apartment.

On appeal of the trial court's default order, Mother contends the protective order admitted at the hearing constitutes credible evidence of a history or pattern of family violence, which legally rebuts the statutory presumption that appointing both parents as joint managing conservators is in the child's best interest. On rebuttal of that presumption, she argues the burden shifted to Father to present clear and convincing evidence demonstrating that his appointment as sole or joint managing conservator would nonetheless serve I.N.A.M.'s best interest, and the record is devoid of any such evidence. According to Mother, Father failed to provide testimony, documentation, or

13

any substantiated evidence to overcome the disqualifying effect of the protective order, leaving the trial court without the necessary legal basis to appoint him as joint or sole managing conservator. We disagree.

"Although section 153.004[f] of the Family Code does direct a finder of fact determining conservatorship of a child to consider evidence that, within the two-year period preceding the filing of the suit or during the pendency of the suit, a protective order was entered against the parent, this provision creates only a rebuttable presumption." *Caballero v. Caballero*, No. 14-16-00513-CV, 2017 WL 6374724, at *5 (Tex. App.—Houston [14th Dist.] Dec. 14, 2017, no pet.) (mem. op.). "As such, 'it does not make the entry of the protective order dispositive on the issue of conservatorship.'" *Id.* (quoting *Alexander v. Rogers*, 247 S.W.3d 757, 764 (Tex. App.—Dallas 2008, no pet.)).

The protective order in this instance was in effect when the temporary order was entered, when the final hearing was heard, and when the default final order was entered. It is clear from the record that the trial court considered the existence of the protective order during the final hearing. As well, it considered evidence establishing that Mother failed to follow previous court orders. Deferring to the factfinder's credibility determinations, as we must, we conclude the trial court did not abuse its discretion by appointing Father as the sole managing conservator and Mother as possessory conservator of I.N.A.M. To the extent Mother raises concerns of possible criminal investigations regarding Father, Mother provides no citation to the record to support these allegations on appeal. *See* Tex. R. App. P. 38.1(g) (requiring appellant's brief to contain citations to the record); *Marshall*, 198 S.W.3d at 789 ("[W]e do not consider factual assertions that appear solely in briefs and are not supported by the record."); *Aguilar*, 349 S.W.3d at 36 ("[S]tatements in a brief unsupported by the record will not be considered on appeal[.]").

Therefore, we overrule Mother's first and second issues.

## V. SUPERVISED VISITATION

In her third issue, Mother raises two complaints concerning the trial court's order that she exercise possession and access to I.N.A.M. through supervised visits at Project Amistad.

### A. Applicable law

A trial court has broad discretion to fashion the terms of an order related to custody, visitation, and possession. *See N.P.M.*, 509 S.W.3d at 563. "The public policy of this state is to . . . assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child[.]" Tex. Fam. Code Ann. § 153.001(a)(1). "The guidelines established in the standard possession order are intended to guide the courts in ordering the terms and conditions for possession of a child by a parent named as a possessory conservator or as the minimum possession for a joint managing conservator." *Id.* § 153.251(a). "[T]here is a rebuttable presumption that the standard possession order . . . (1) provides reasonable minimum possession of a child for a parent named as a possessory conservator or joint managing conservator; and (2) is in the best interest of the child." *Id.* § 153.252. "If there is sufficient evidence to rebut this presumption, however, the trial court may then deviate from the standard possession order." *N.P.M.*, 509 S.W.3d at 564.

In ordering terms of possession "other than a standard possession order, the court shall be guided by the guidelines established by the standard possession order and may consider: (1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and of the parent named as a possessory conservator; and (3) any other relevant factor." Tex. Fam. Code Ann. § 153.256. "A reviewing court's holding that a trial court did not abuse its discretion implies that the evidence contained in the record

15

rebutted the presumption that the standard possession order was reasonable and in the child's best interest." *N.P.M.*, 509 S.W.3d at 564.

### B. Analysis

First, Mother complains the trial court abused its discretion by restricting her possession to two hours of supervised visitation per week. She asserts that the trial court's order deviated from the Texas Standard Possession Order, without clear and convincing evidence of harm or endangerment, thereby infringing on her fundamental parental rights. Mother argues the "absence of [such] compelling evidence renders the trial court's order legally insufficient and constitutes an abuse of discretion, necessitating reversal."

Here, the trial court heard evidence that Father had not seen I.N.A.M. since October 2022, despite him requesting, and the trial court issuing, a writ of attachment directing Mother to present I.N.A.M. to the court. The trial court found that the writ "has not been accomplished because the whereabouts of [Mother] and the child are unknown to this date." The trial court also heard evidence that, when a police detective went to pick up I.N.A.M., Mother refused and drove off "dragging the detective," with I.N.A.M. still in the vehicle. Father also testified that, on another occasion, Mother "yanked" I.N.A.M.'s arm to try and get her out of Father's vehicle. There was also evidence regarding Father's concern for Mother's mental health and his belief that she went out drinking most nights. Additionally, at one point Mother told the trial court that she would not follow any court order. The trial court heard evidence that Father has his own house with a bedroom for I.N.A.M., he was employed full time, and he had immediate family living in El Paso. On the other hand, the trial court heard no evidence regarding Mother's present circumstances and her means to care for I.N.A.M.

16

Accordingly, we conclude the record evidence rebutted the presumption that Mother should be awarded standard possession of I.N.A.M. *See Davis v. Davis*, No. 13-01-707-CV, 2003 WL 21355239, at *5 (Tex. App.—Corpus Christi-Edinburg June 12, 2003, no pet.) (mem. op.) (considering "assaultive behavior and [] unruly conduct in the courtroom" as evidence prompting deviation from the standard possession order). On this record, we conclude Mother did not establish the trial court abused its discretion by limiting her access to I.N.A.M.

Second, Mother challenges the legal sufficiency of the trial court's findings that her "refusing to obey the temporary orders constitutes an endangerment to the child" and that "her actions in withholding the child from access to her father is an endangerment to the child." The basis of her challenge is that she "has consistently challenged the validity of the temporary orders as void ab initio, asserting from the outset that no lawful order existed granting Father . . . the right to possession of the child" ; therefore, "any claim that [she] 'withheld' the child is fundamentally flawed, as she was not in violation of any legally binding court order." Continuing, she argues that if the temporary orders are valid, she "has credible evidence of the harm and endangerment Father . . . posed to the child—evidence that the Court ignored and failed to consider." She alleges the trial court not only refused to allow her to present such evidence but also disregarded its duty to assess whether enforcement of the temporary orders would place the child at risk. Mother contends she "was left with no choice but to take protective measures to safeguard her child, especially given the Court's failure to uphold her due process rights and the law."

Mother provides no citation to the record to support these allegations. Mother did not attend the final hearing and, therefore, she presented no evidence to the trial court. *See Marshall*, 198 S.W.3d at 789 ("[W]e do not consider factual assertions that appear solely in briefs and are not supported by the record."); *see also* Tex. R. App. P. 38.1(g) and (i) (requiring appellant's brief to

17

contain citations to the record). To the extent Mother argues that the temporary orders were void because she was not served with process and the trial court lacked jurisdiction, we have already disposed of these arguments under Mother's fifth and sixth issues in which she raised her jurisdictional challenges. For the same reasons as explained above, we reject this argument.

Accordingly, we conclude Mother has not shown the trial court abused its discretion by restricting her visitation. We overrule Mother's third issue.

## VI. SPECIFICITY OF ORDER REGARDING ACCESS TO I.N.A.M.

In her fourth issue, Mother challenges the trial court's specificity in ordering her supervised visits through Project Amistad. Mother asserts the language "one visit per week for two hours depending on Project Amistad availability" is overly vague and fails to provide clear, enforceable terms, thereby rendering the order legally insufficient. She contends the order's "reliance on the availability of a third party, Project Amistad, improperly delegates judicial authority to an external entity and creates uncertainty that hinders [her] ability to assert her parental rights effectively." She argues that the "lack of specific and enforceable terms in the [default] final order effectively deprives [her] of meaningful access to her child and prevents her from seeking relief through the courts should visitation disputes arise."

To be enforceable by contempt, an order must set forth the terms of compliance in clear, specific, and unambiguous terms so that a person charged with obeying the order will readily know exactly what duties and obligations are imposed. *In re Matthews*, No. 02-11-00202-CV, 2011 WL 2651912, at *3 (Tex. App.—Fort Worth July 7, 2011, no pet.) (mem. op.). "The question of whether an order is enforceable by contempt depends on whether the order is definite and certain, and the focus is on the wording of the judgment itself." *Id.* If the trial court's order requires inferences or conclusions about which reasonable persons might differ, it is insufficient to support

18

a judgment of contempt. *Id.* (citing *Ex parte Chambers*, 898 S.W.2d 257, 260 (Tex. 1995) (orig. proceeding)).

Typically, provisions which fail to provide for a specific time period in which a parent can exercise possession and access will not be specific enough to be enforceable. *See Ex parte Brister*, 801 S.W.2d 833, 834–35 (Tex. 1990) (holding decree's possession provisions unenforceable by contempt because they gave father unilateral power to modify detailed possession schedule by merely providing mother notice of his changing work schedule); *In re Marriage of Collier*, 419 S.W.3d 390, 398–99 (Tex. App.—Amarillo 2011, pet. denied) (concluding that custody order providing for father's visitation "at the discretion of" mother was unenforceable by contempt); *Hale v. Hale*, No. 04–05–00314–CV, 2006 WL 166518, at *3, 6 (Tex. App.—San Antonio Jan. 25, 2006, pet. denied) (mem. op.) (reversing non-specific order that prevented father from seeing daughter "until a therapist recommends visitation").

However, here, the provisions ordered are sufficiently specific enough to be enforceable by contempt. *See S. C. v. Tex. Dep't of Family & Protective Services*, No. 03-20-00179-CV, 2020 WL 4929790, at *5 (Tex. App.—Austin Aug. 21, 2020, no pet.) (mem. op.) (holding award of "two or three hours of unsupervised visitation with the children" was not so vague as to be unenforceable as it provided for at least two hours of access each week); *In re A.L.E.*, 279 S.W.3d 424, 432–34 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that order requiring mother to submit-to-and-pass-drug tests at a specific facility and at certain intervals—and provide results to father prior to scheduled unsupervised possession periods—and providing for only supervised visitation by specific entity upon her testing positive for drugs—was sufficiently specific to be enforceable by contempt). By the trial court's order, Mother must be given access and possession

19

of the child through Project Amistad once a week for a period of two hours. The order provides for a definite period of time that is not so vague as to be unenforceable.

Accordingly, we overrule Mother's fourth issue.

## VII. RELIEF NOT REQUESTED

In her seventh and final issue, Mother maintains the trial court erred by signing a default final order that included provisions neither requested in Father's pleadings nor otherwise raised during trial. Specifically, she contends that Father neither pleaded for, nor requested at trial, the exclusive right to designate I.N.A.M.'s primary residence without regard to geographic area.

Texas Rule of Civil Procedure 301 provides that a court's judgment shall conform to the pleadings. Tex. R. Civ. P. 301. "If issues not raised by the pleadings are tried by express or implied consent of the parties, the issues shall be treated as if they had been raised by the pleadings." *Flowers v. Flowers*, 407 S.W.3d 452, 458 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also* Tex. R. Civ. P. 67, 301. To determine whether an issue was tried by consent, we must review the record not for evidence of the issue, but rather for evidence of trial of the issue. *Hartford Fire Ins.*, 287 S.W.3d at 780; *In re A.B.H.*, 266 S.W.3d 596, 600 (Tex. App.—Fort Worth 2008, no pet.). "Consent may be found only where evidence regarding a party's unpleaded issue is developed under circumstances indicating that both parties understood the issue was raised in the case, and the other party failed to make an appropriate complaint." *In re A.B.H.*, 266 S.W.3d at 600.

Here, both Mother and Father filed pleadings seeking conservatorship, possession and access, and support provisions regarding I.N.A.M. These pleadings invoked the trial court's jurisdiction to determine conservatorship rights and support obligations regarding I.N.A.M. The trial court subsequently issued a temporary order naming Father as I.N.A.M.'s sole managing

20

conservator. Thus, the record demonstrates that both parties understood at that point in the litigation that Father's appointment as I.N.A.M.'s sole managing conservator "was [implicated] in the case." *In re A.B.H*., 266 S.W.3d at 600.

To the extent Mother complains that Father did not plead for the exclusive right to designate I.N.A.M.'s primary residence without regard to geographic area, a request to be appointed sole managing conservator of a child encompasses the right to designate the child's primary residence. *See* Tex. Fam. Code Ann. 153.132(1).

Accordingly, we overrule Mother's seventh issue.

## VIII. CONCLUSION

We affirm the trial court's judgment.

GINA M. PALAFOX, Justice

January 28, 2026

Before Palafox and Soto, JJ., Longoria, J. (Senior Judge)
Longoria, J. (Senior Judge) (sitting by assignment)